## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA,**

**v.**                                    **Case No.: 8:24-cr-244-TPB-TGW**

**SHMAR ARMEZE GENTLE.**

_____/

### DEFENDANT'S SENTENCING MEMORANDUM

"Do not judge me by my success, judge me by how many times I fell down and got back up."[1] Born to a 17-year-old mother and 18-year-old father, Mr. Gentle's childhood was punctuated by domestic violence arrests of both parents, the intermittent absence of his mother due to incarceration, and frequent eviction proceedings.

Mr. Gentle's mother started serving jail time when Mr. Gentle was one-year-old, first due to criminal traffic infractions and then due to a significant series of aggravated battery, simple battery, and domestic battery arrests. From ages one to seven, his mother was arrested seven times and served time on five different cases, she had been arrested 28 times by the time Mr. Gentle attained 18. At seven-years-old, the eviction suits began, culminating in ten such cases during Mr. Gentle's youth and early adulthood.

---

[1] Nelson Mandela.

When Mr. Gentle's mother was incarcerated, he was sent to stay with a family member. Unfortunately, this placement was no respite from violence and turmoil. The family member "was often angry and physically abusive."[2] Mr. Gentle would recall that "[s]he would 'whoop' us for no reason. I was so little I didn't know what I was doing wrong."[3]

One would think this incubator of violence would have resulted in juvenile justice involvement or violent outbursts at school. Instead, Mr. Gentle "got back up again" and defied the odds. The eldest of his mother's six children[4], Mr. Gentle cared for the younger five children and remained juvenile-justice-free throughout his childhood and school days. In fact, in his last two years in high school, he straightened out his academics and raised his grades to primarily A's and B's. Further, in his last year he reduced his absenteeism, played school sports, and graduated on time from High School earning a diploma. Exhibit B, Gentle High School transcript.

It was only when Mr. Gentle was nearly 20-years-old that he became involved in the criminal justice system, with the instant case occurring in early 2022 when Mr. Gentle was 25-years-old. Many of these cases involved fleeing

---

[2] Exhibit A, Biopsychosocial Report of Shmar Gentle, by Dolly Ferraiuolo, PhD, LCSW filed separately under seal.

[3] *Id.*

[4] His father had 11 children. PSR ¶ 44.

and/or resisting <u>without</u> violence and it is little wonder, as Mr. Gentle has been evading confrontation and violence his whole life. Now, it is time for Mr. Gentle to get back up *again*.

**PROCEDURAL HISTORY**

On June 25, 2025, Mr. Gentle pleaded guilty to one count of possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1). His sentencing hearing is on October 7, 2025.

**MEMORANDUM OF LAW**

This memorandum establishes that a variance is warranted in Mr. Gentle's case pursuant to 18 U.S.C. § 3553, was well as departures under the guidelines, notwithstanding the advisory guideline sentence. The application of the sentencing statute's framework is especially critical since each of its sentencing factors supports Mr. Gentle's request for a variance. See 18 U.S.C. § 3553(a).

I.    **Booker and its Progeny Provide the Court with the Discretion to Impose a Variance under 18 U.S.C. § 3553(a)**

A sentencing court is unencumbered in its ability "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 53 (2007) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). To conduct an individualized assessment, the Sentencing Reform Act provides that "[n]o limitation shall be

3

placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. This right is fundamental to our sentencing process and has been recently affirmed by the United States Supreme Court. See *Concepcion v. United States*, 597 U.S. 481 (2022).

As contemplated by the Supreme Court, this Court's ability to consider all relevant information at the time of a sentencing is critical to its ability to fashion a just sentence in his case. See *Pepper v. United States*, 562 U.S. 476, 488 (2011) ("Permitting sentencing courts to consider the widest possible breadth of information about a defendant ensures that the punishment will suit not merely the offense but the individual defendant.").

Consistent with this principle, § 3553(a) requires sentencing courts to consider not only the advisory Guidelines range, but also the facts of a specific case through the lens of seven factors. See 18 U.S.C. § 3553(a)(1)-(7). Against the backdrop of these factors, it is evident that a sentence of time-served is appropriate in this case.

**(1)    The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.**

The significance of the first § 3553(a) factor is that defendant's criminal conduct cannot be considered without the consideration of his life led beyond his

4

crime. See *United States v. Adelson*, 441 F. Supp. 2d 506, 513-14 (S.D.N.Y. 2006)(Rakoff, J.)("But, surely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance.").

### The nature and circumstances of the offense

Mr. Gentle is charged with the nonviolent crime of possession of a firearm by a convicted felon, did not resist arrest for this charge, and accepted responsibility for this act by entering a timely plea of guilty. Further, police reports indicate that Mr. Gentle's girlfriend owned the car in which the firearm was found, the girlfriend told law enforcement the gun belonged to her, and the girlfriend removed all of her other possessions out of the car.[5]

### The History and Characteristics of the Defendant

Mr. Gentle is a father of three and a beloved partner of Brandy Oxendine. *See* Letters of Support, Exhibit C, D and E.

---

[5] Discovery at Bates 00156-00157.



"[H]e is always taking the kids fishing or to the park and after they go for ice cream."[6]





---

[6] Oxendine Letter, p. 1.

With a stable partner and high school diploma, there is no reason to believe Mr. Gentle will not get back up and succeed after his release from incarceration.

**(2)      The Need for the Sentence Imposed**

*(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide punishment for the offense.*

The defense maintains that Mr. Gentle's guideline range is between 30 and 37 months. But, Mr. Gentle was serving a state sentence when a federal writ was issued for him on this case on September 23, 2024. Doc. 6. He was formally arrested on October 3, 2024 and brought into federal custody and his state sentence only ended on July 20, 2025. Doc. 12 and Exhibit F. Due to 18 U.S.C. 3585(b), Mr. Gentle will only have started earning federal credit on July 21, 2025. Thus, the defense is asking for a time-served sentence.

*(B) To afford adequate deterrence to criminal conduct*

There is no correlation between punishments and reductions in crime. *See* Dr. Oliver Roeder et al., *What Caused the Crime Decline?*, Brennan Center for Just., 22-23 (Feb. 12, 2015) and Gary Kleck and J.C. Barnes, *Deterrence and Macro-Level Perceptions of Punishment Risks: Is There a "Collective Wisdom"?*, 59 Crime & Delinquency 1006, 1031-33 (2013). *See also*, National Institute of Corrections, *Why Incarceration Is Not the Best Way to Keep Communities Safe*, (2016) (concluding (1) While jail and prison do indeed prevent crime while people are locked up, once released, incarceration has, at best, a negligible impact on

crime prevention and, at worst, is crime-producing. (2) Community corrections has been shown to be effective in reducing future criminal activity by 10 to 30%. (3) Individuals under community supervision reported that "doing time" is easier than having to abide by their release requirements. (4) Crime victims do not want new victims and support rehabilitation, perhaps even more so than the general public. (5) The more communities invest in effective treatment, social services, and community supervision, the greater their financial return on investment.). [7]

*(C) To protect the public from further crimes of the defendant*

Having established that prison sentences, regardless of length, have no impact on general deterrence, this section demonstrates that Mr. Gentle's history and characteristics and, most importantly, his maturity <u>now</u>, show that he is unlikely to commit another crime. See[8]:



---

[7] https://nicic.gov/resources/nic-library/all-library-items/myths-facts-why-incarceration-not-best-way-keep-communities

[8]  https://nij.ojp.gov/media/image/2776

*(D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner*

Mr. Gentle is a high school graduate and does not need any such resources from the Bureau of Prisons.

**(3), (4) & (5) The Kinds of Sentences and The Guideline Sentencing Range Established and any Pertinent Sentencing Commission Policy Statements**

The Defense maintains the advisory, non-mandatory sentencing range indicated by the guidelines in this case is between 30 and 37 months.

**(6) The Need to Avoid Unwarranted Sentencing Disparities**

Mr. Gentle resolved his state case based on these March 29, 2022 facts on August 10, 2022, more than three years ago. The federal prosecution based on the same facts began via indictment on June 5, 2024, which was more than two years after the events. The defense asks the Court to consider the effect of this delayed prosecution had on Mr. Gentle's situation versus on another person whose case was timely indicted and resolved in 2022. In fact, a sentence at the 30-month bottom of the guidelines or the 37-month top of the guidelines would have been over by now had Mr. Gentle been sentenced along with the other charges that grew out of the March 29, 2022 arrest.

## II.    Departures

### (1)    Departure under U.S.S.G. § 5K2.23, Discharged Terms of Imprisonment (Policy Statement)

*A downward departure may be appropriate if the defendant (1) has completed serving a term of imprisonment; and (2) subsection (b) of §5G1.3 (Imposition of a Sentence on a Defendant Subject to Undischarged Term of Imprisonment or Anticipated Term of Imprisonment) would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense. Any such departure should be fashioned to achieve a reasonable punishment for the instant offense.*

Here, Mr. Gentle recently completed a sentence from state court that began on May 10, 2023 and ended on July 20, 2025. The state court case that led to the most recent state court arrest (arrest on a violation of probation warrant) is relevant conduct in the instant federal case. The federal Bureau of Prisons will not credit Mr. Gentle for any of the 2 years, 2 months, and 11 days of that sentence due to 18 U.S.C. § 3485(b). The defense asks the Court to take this into consideration in fashioning a just sentence.

## CONCLUSION

For the reasons stated above, we respectfully request that the Court impose a sentence of time-served in this case so that Mr. Gentle may get back up and care for his family. We respectfully submit that a sentence of time-served would both fulfill the purposes of 18 U.S.C. § 3553(a) and best serve the interests of justice. We appreciate the Court's consideration of the points raised in this Memorandum and the information submitted to the Probation Officer.

Respectfully submitted,

A. FITZGERALD HALL, ESQ.
ACTING FEDERAL DEFENDER

/s/ Mary Claire Wolf
Mary Claire Wolf, Esq.
New Jersey Bar No. 034762009
Assistant Federal Defender
400 North Tampa Street,
Suite 2700
Tampa, Florida 33602
(813) 228-2715
MaryClaire_Wolf@fd.org

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of September 2025, a true copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to:

David Sullivan, AUSA

/s/ *Mary Claire Wolf*
Mary Claire Wolf, Esq.
Assistant Federal Defender